UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BARRY EPSTEIN, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | No. 14 C 8431 |
| v. | ) | |
| | ) | Judge Thomas M. Durkin |
| PAULA EPSTEIN, | ) | |
| | ) | |
| DEFENDANT. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff seeks the recusal of this Court and Magistrate Judge Finnegan on the basis of bias against him and in favor of his former spouse, the defendant in this case.[1] He moves under two statutes: 28 U.S.C. § 144, which requires that a new judge be assigned if a party "files a timely and sufficient affidavit that the judge . . . has a personal bias against him or in favor of any adverse party," and 28 U.S.C. § 455, which requires that judges disqualify themselves when their "impartiality might reasonably be questioned" or when they have "a personal bias or prejudice

---

[1] Courts have held that the proper procedure for removing a magistrate judge is through a motion for recusal first presented to the challenged magistrate judge. *See, e.g.*, *Clay v. Brown, Hopkins & Stambaugh*, 892 F. Supp. 11, 13 (D.D.C. 1995) (citing authority) ("Fundamental principles of due process require that the judge being accused of bias be given an opportunity to respond."). Nevertheless, district court judges have ruled on combined motions to disqualify themselves and the magistrate judge under circumstances similar to those confronting this Court, *see, e.g.*, *Bowers v. Gaunt*, 2009 WL 1241187, at *1 (S.D. Ind. May 4, 2009); *Lindell v. Casperson*, 2004 WL 3053632, at * 1 (E.D. Wisc. Dec. 27, 2004); *see also Marozsan v. United States*, 90 F.3d 1284, 1290 (7th Cir. 1996) (affirming the substantive correctness of a decision by the district court judge who denied a party's motion to recuse the magistrate judge, but noting that parties may only seek review of a request for recusal by moving for a writ of mandamus at the time the request is denied). In the interest of expediency, and because Judge Finnegan's role in this case is likely now over in any event, this decision will address the allegations against both Judge Finnegan and this Court.

1

concerning a party." While a federal judge has a duty not to sit where disqualified for bias, he has "a duty to *sit* where *not disqualified* which is equally as strong." *Laird v. Tatum*, 409 U.S. 824, 837 (1972) (emphasis in original); *see also In re United States*, 572 F.3d 301, 308 (7th Cir. 2009) ("[N]eedless recusals exact a significant toll; judges therefore should exercise care in determining whether recusal is necessary, especially when proceedings already are underway."). For the reasons set forth below, the plaintiff's recusal motion is denied.

## Discussion

Recusal under section 144 is mandatory once a party submits a timely and sufficient affidavit and his counsel presents a certificate stating that the affidavit is made in good faith. *See United States v. Sykes*, 7 F.3d 1331, 1339 (7th Cir. 1993) (citation omitted); 28 U.S.C. § 144. To be timely, a section 144 affidavit "must be filed as soon as the basis for disqualification is known." *Carter v. Meyers*, 295 Fed. App'x 836, 837 (7th Cir. 2008) (citing *Tezak v. United States*, 256 F.3d 703, 717 n. 5 (7th Cir. 2001)). Moreover, the statutory requirement that counsel certify that the affidavit is filed in good-faith is "enforced strictly," *United States v. Betts-Gaston*, 860 F.3d 525, 537 (7th Cir. 2017), such that "[f]ailure to submit counsel's certificate of good faith alone is grounds for denying [a recusal] motion," *United States v. Robinson*, 2002 WL 31426182, at * 3 (N.D. Ill. Oct. 28, 2002). In passing on the legal sufficiency of the affidavit, the court must assume the truth of its factual assertions, provided they are "sufficiently definite and particular to convince a reasonable

person that bias exists; simple conclusions, opinions, or rumors are insufficient." *Sykes*, 7 F.3d at 1339.

The defendant argues that the recusal motion is both untimely and procedurally defective. R. 275 at 2. She points out that the timeline of grievances set forth in the plaintiff's affidavit establishes that as early as January or February of 2017, the plaintiff became concerned that Judge Finnegan and this Court may have been biased against him and in favor of the defendant. Giving the plaintiff the benefit of the doubt that the cumulative effect of the courts' conduct over several months is what gives rise to this motion, as opposed to any single incident on any date in particular, the Court will not penalize the plaintiff for the timing of his filing. The defendant also correctly notes that plaintiff's counsel did not file a certificate of good faith in connection with his affidavit. While the Court would be justified in denying the recusal motion on that basis, *see Betts-Gaston*, 860 F.3d at 537, the court will assume, arguendo, that the affidavit was filed in good faith, and will rely on the legal memorandum filed by counsel to reach the merits of the motion. *See Marino v. United States*, 1999 WL 39008, at * 5-6 (N.D. Ill. Jan. 15, 1999) (assuming for purposes of analysis that the "strict procedural requirements of § 144" were met).

As to the merits, because the standard of "personal bias" bears the same meaning under both sections 144 and 455, *see id.* at *6 (citing authority), the Court will simultaneously analyze the purported bias under both statutes. The relevant question for purposes of disqualification is whether "the judge's impartiality might

3

reasonably be questioned by a well-informed, thoughtful observer rather than [by] a hypersensitive or unduly suspicious person." *O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 988 (7th Cir. 2001) (internal quotation marks and citation omitted). The standard is an objective one: "That an unreasonable person, focusing only on one aspect of the story, might perceive a risk of bias is irrelevant . . . [A] reasonable person is able to appreciate the significance of the facts in light of relevant legal standards and judicial practice and can discern whether any appearance of impropriety is merely an illusion." *In re Sherwin-Williams Co.*, 607 F.3d 474, 477-78 (7th Cir. 2010); *see also Matter of Mason*, 916 F.2d 384, 386 (7th Cir. 1990) ("An objective standard is essential when the question is how things appear to the well-informed, thoughtful observer rather than to a hypersensitive or unduly suspicious person. Because some people see goblins behind every tree, a subjective approach would approximate automatic disqualification").

A. <u>Rulings by the Court and Judge Finnegan</u>

The plaintiff's affidavit, in large part, tracks the progress of the docket in this matter, summarizing rulings made by Judge Finnegan and this Court regarding scheduling, discovery, and the protected or privileged status of various information relevant to the plaintiff's claims.[2] R. 268-1 at 1-3. The plaintiff prefaces this chronology with his conclusion that "both judges have consistently ruled against me and blocked my progress at every turn." *Id.* ¶ 2. It is well established that "rulings

---

[2] The plaintiff also disputes the propriety of the Court's review of the facts pertaining to whether the defendant intentionally obstructed his ability to fund his prosecution of this case. R. 268-1 ¶¶ 6, 30. The Court stands by its exhaustive review of the records relevant to that ruling. *See* R. 258 (Tr. Oral Ruling July 6, 2017) at 3-9.

4

by the judge almost never constitute a valid basis for a bias or partiality motion." *Szach v. Village of Lindenhurst*, 2015 WL 3964237, at *4 (N.D. Ill. June 25, 2015) (internal quotation marks omitted) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)). Indeed, they will only do so "if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." *Liteky*, 510 U.S. at 555.

No such favoritism or antagonism can be gleaned from the rulings in this case. Even the selected docket entries on the plaintiff's timeline show multiple orders favorable to the plaintiff's litigation position. *See* R. 268-1 ¶¶ 2a, 2h (referring to R. 69 and R. 154, granting the plaintiff's motions to seal), *id.* ¶ 2f (referring to R. 114, granting the plaintiff's motion to extend fact discovery), *id.* ¶ 2j (referring to R. 183 and R. 196, effectively granting all substantive aspects of the plaintiff's motion to compel a forensic review of the defendant's laptop computer), *id.* ¶ 2k (referring to R. 198, granting the plaintiff additional time to respond to the defendant's motion to strike his jury demand). A more complete review of the docket reveals a number of additional rulings benefitting the plaintiff. *See, e.g.*, R. 98 (extending discovery deadlines), R. 139 (continuing the trial date); R. 156 and R. 187 (extending expert discovery deadlines).

Moreover, bias is not simply a matter of counting rulings against you and rulings in your favor. Indeed, half of the litigants before the Court are likely disappointed by its rulings, since, for the most part, the Court can only decide an issue in favor one side. To the extent the plaintiff disputes the correctness of certain

5

rulings, he may raise his concerns on appeal, but recusal is not an appropriate remedy. *See In re City of Milwaukee*, 788 F.3d 717, 722 (7th Cir. 2015) ("Despite our best efforts, federal judges sometime make mistakes or see factual or legal issues differently. Such ordinary errors or disagreements provided a basis for appeal, but not recusal."). Still, to clarify the courts' position, the following responses to the plaintiff's affidavit are warranted.

1. Scheduling

The plaintiff expresses frustration with the pace of discovery and the trial date set in this case, claiming he needed more time to adequately marshal evidence given what he perceives to be the complexity of his claims. *See* R. 168-1 ¶¶ 2b, 2e, 2l, 2p, 6-8. While the Court understands that the plaintiff carries the burden of proving his claims, it is likewise true that he holds the proverbial reins in the litigation, deciding which claims to prosecute in the first place. Moreover, where the defendant carries the burden on her affirmative defenses, as she does here, the discovery and trial schedules impact preparation for both sides, and so tend to be relatively neutral in their effect. It is therefore difficult for the plaintiff to claim that the schedule was biased against him and in favor of the defendant.

The Court notes now, as it has previously, that discovery in this case was open for more than five months, which is typical of a case of this size and complexity. *See* R. 158 (Hrg. Tr. July 6, 2017) at 4. In order to manage its docket of more than 350 cases, this Court sets trial dates, and tries whenever possible to keep them. Doing so allows for the orderly administration of the Court's calendar and, at

6

times, encourages settlement. The trial date in this case has been extended twice and discovery deadlines have been extended accordingly. While it is clear the plaintiff desires even more time, the Court is required to balance that desire with the defendant's equal right to have the claims against her expeditiously adjudicated. The scheduling in this case does not reflect bias, but practicality and consideration of interests on both sides.

2. Scope of Discovery

The plaintiff also argues bias in the courts' discovery rulings. *See* R. 268-1 ¶¶ 3, 19, 20, 24. Specifically, the plaintiff seems to believe that the content of the allegedly intercepted emails and the defendant's motivation in intercepting them are irrelevant, and should therefore have been held beyond the scope of discovery. *See id*. ¶ 3 (characterizing the courts' rulings as "allowing the discovery of prejudicial, irrelevant information by the Defendant"). The plaintiff is incorrect. As he is aware, Judge Posner indicated in his concurrence to the decision on the plaintiff's appeal that the content of the emails and the defendant's motivation in intercepting them could create a legal defense to the plaintiff's claims. Judge Posner wrote:

> I would vote to interpret the Act as being inapplicable to—and therefore failing to create a remedy for—wiretaps intended, and reasonably likely, to obtain evidence of crime, as in this case, in which the plaintiff invoked the Act in an effort to hide evidence of his adultery from his wife.

*Epstein v. Epstein*, 843 F.3d 1147, 1153 (7th Cir. 2017). Even without what the parties have dubbed "the Posner defense," the subject-matter of the emails would

7

still be relevant to the case, and thus discoverable, in light of various allegations set forth in the operative complaint. *See, e.g.*, R. 178 ¶¶ 22, 28, 34, 49, 72-73 (alleging that the plaintiff sought to use these emails as leverage in divorce proceedings); *id.* ¶¶ 35, 41-42, 60-62, 65-68 (alleging, as a basis for damages, that the defendant's allegations of infidelity were "extremely humiliating" to the plaintiff and caused him "severe mental anguish"). Any perception of bias by the plaintiff in the discovery process reflects an unreasonable, one-sided view of what matters in this case. *See Sherwin-Williams*, 607 F.3d at 778 ("a reasonable person is able to appreciate the significance of the facts in light of relevant legal standards").

3. Privacy

The plaintiff expresses particular frustration over what he perceives as bias in rulings regarding his "private information." *See* R. 268-1 ¶ 2d ("The judges continually allow the Defendant to publish my private information."); *id.* ¶¶ 10-13 (Judge Durkin feels . . . that my personal, confidential information should be made public."). The Court has repeatedly reminded the plaintiff of the strong presumption in the Seventh Circuit in favor of public access to judicial records, particularly those upon which courts rely in reaching their rulings. *See, e.g.,* R. 105 (Hrg. Tr. Feb. 7, 2017) at 8-9, 13-14; *see also Smith v. U.S. District Court for the Southern District of Illinois*, 956 F.2d 647, 650 (7th Cir. 1992). More importantly, the Court, Judge Finnegan and the defendant have gone to significant lengths to accommodate the plaintiff's privacy concerns, despite the fact that some of those concerns were occasioned by his own inadvertence in publicly filing documents in this case

8

containing the information he now so vigorously seeks to protect. *See* R. 268-1 ¶ 8 (admitting that "[s]ome of the documents to be sealed were e-mails which [the plaintiff] attached to his first amended complaint"); *see also* R. 268-1 ¶ 30 (also admitting that the e-mails were attached to the amended complaint and noting that the now-dismissed co-defendant also published the e-mails in an unsealed 2015 filing, to which the plaintiff failed to object for approximately two years). The Court granted the plaintiff's motion for protective order immediately upon remand of the case from the Seventh Circuit, *see* R. 69, and furthermore sealed a years-earlier issued Memorandum Opinion & Order and filed a redacted version in its place, *see* R. 36, 68. Moreover, despite the defendant's disagreement with the plaintiff's position regarding what information is truly private, she has filed multiple exhibits under seal on her own motion to accommodate the plaintiff's privacy concerns; all of those motions have been granted by Judge Finnegan and this Court.[3] *See, e.g.,* R. 101, 168, 174, 209, 226, 252, 256, 272. Accordingly, any perception of bias as it relates to the handling of private information in this case is unfounded.

---

[3] The plaintiff has only been denied leave to seal two documents, neither of which contain sensitive third-party information or, with respect to the parties, the type of personal identifying information typically subject to protection. *See* R. 82 (denying without prejudice the motion to seal two e-mails, one of which redacts all third-party information but contains the plaintiff's e-mail address, and another which was sent by the plaintiff to the defendant and thus contains both parties' e-mail addresses but no other identifying or private information); *see also* R. 105 at 13 (explaining that the e-mail from the plaintiff to the defendant would not be sealed because "[w]hen you're communicating with someone who you're adverse with in a divorce proceeding and it's not through counsel, you take the risk that that communication is going to become public, not private, not part of a settlement discussion, not covered under the rules of evidence.").

B.	Statements by the Court and Judge Finnegan

Following his docket review, the plaintiff states, "[a]dditionally, Judges Finnegan and Durkin have made clear their personal, extrajudicial bias against me through various personal statements and bias." R. 268-1 ¶ 5. The plaintiff misunderstands the term "extrajudicial." Every statement he cites was made in court, at the settlement conference, or in a written ruling based on case materials or representations by the parties; in other words, the plaintiff cites only judicial statements. "Only in the rarest circumstances will judicial statements show the degree of favoritism or antagonism required when no extrajudicial source is involved." *City of Milwaukee*, 788 F.3d at 721 (internal punctuation omitted) (citing *Liteky*, 510 U.S. at 555). To show bias warranting recusal in a judicial statement, a party must allege more than that "a judge rejected [his] arguments or spoke harshly to him: Expressions of impatience, dissatisfaction, annoyance, and even anger are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display." *Szach*, 2015 WL 3964237 at * 4 (internal punctuation omitted) (quoting *Liteky*, 510 U.S. at 555-56).

This is not one of those "rarest of circumstances" where judicial statements show impermissible bias. Most of the quotes the plaintiff cites have no bearing on bias. *See* R. 268-1 ¶¶ 7, 10-12 (quoting the judge's impressions of the litigation process generally); *id.* ¶ 16 (quoting an entirely neutral remark about the court's preference for a jury trial); *id.* ¶¶ 23, 29 (quoting alleged misstatements in written decisions that have no functional significance or impact on the issues decided in

10

those opinions or on the case more broadly); *id.* ¶ 27 (quoting the Court's objective, legal view of what material is privileged or protected by the Fifth Amendment right against self-incrimination, and what material may be private, but nevertheless subject to disclosure in civil litigation). The Court briefly responds to three averments, which, taken out of context as they were in the plaintiff's affidavit, warrant explanation.

First, the plaintiff states that at the settlement conference held on February 2, 2017, Judge Finnegan expressed impermissible bias when she remarked that "[the defendant] is the nicest woman I have ever met," and that, in her view, the plaintiff's demeanor would not be well-received by a jury. R. 268-1 ¶ 17. While the plaintiff may have been disappointed by Judge Finnegan's assessment, it is not a basis for recusal. The plaintiff, a career expert-witness, has expressed his belief to the defendant that he is likely to prevail in this case because juries find him compelling. *See* R. 76-7 at 3 ("Recall, too, that I will be testifying, and I've never ever lost a jury trial (albeit before always as an expert, not as a litigant).") In attempting to move the case toward settlement, Judge Finnegan may have considered it useful to challenge the plaintiff's opinion of himself. After all, it is the nature of a settlement conference that in attempting to facilitate a resolution of the case, the judge informs both parties of her assessment of the strengths and weaknesses of their respective positions. "A judge's frank assessments in conferences are not guaranteed to be infallible, but they can be helpful in coping with attorneys' sometimes unrealistic devotion, on all sides, to their clients' causes."

11

*In re Milwaukee*, 788 F.3d at 722. Without expressing any opinion on the correctness of Judge Finnegan's assessment of the parties' respective jury-appeal (because the Court has not met either of the parties), the Court believes that Judge Finnegan intended to be helpful in sharing her view. Moreover, the plaintiff has no idea what Judge Finnegan said to the defendant, and the Court has every reason to believe she was equally frank in her assessment of the obstacles the defendant may face at trial. Recusal is unwarranted.

Second, the plaintiff argues that this Court has formed an antagonistic view of him based on a comment made to counsel from the bench at a motion hearing on February 7, 2017. The comment followed a lengthy statement by plaintiff's counsel impugning the motivation and tactics of opposing counsel in attaching to a response brief a non-privileged e-mail from the plaintiff to the defendant. Specifically, plaintiff's counsel accused opposing counsel of attaching the e-mail as a means of "extortion." The Court responded with the following assessment of the e-mail: "[It] [s]ounds like he," referring to the plaintiff, "[i]s the one doing the extorting. He's telling his wife, or ex-wife, 'If you don't settle with me, I'm going to go to the FBI and get you criminally prosecuted.'" *See* R. 105 at 9-14. The e-mail reads as follows:

> You will face likely criminal investigation and defense costs, and may well be found liable for money penalties and even jail time . . . Before any of this goes forward, I am holding out a possibility of making all of this come to an end – the legal fees, the uncertainty of an award to be paid by you in the federal civil trial, the risk of criminal prosecution and incarceration . . . But the time for this is very short, as the federal appellate court mandate should be coming in a few weeks, after which I definitely won't be willing to withdraw the suit or the criminal complaint against you.

12

R. 76-7. Having now reread the e-mail, the Court's statement on February 7 continues to reflect its view of the e-mail's content. Contrary to the plaintiff's assertions, however, that view does not make it impossible for the Court to be fair in this case. *See United States v. Diekemper*, 604 F.3d 345, 352 (7th Cir. 2010) (holding that the sentencing judge's comment that the defendant was "manipulative, narcissistic, and twisted" was not a basis for recusal where it was merely "a reflection of the facts before the district court"). As noted earlier, the Court has never met the plaintiff, and the Court's view of one e-mail he sent does not mean that the Court feels deeply, or even slightly, antagonistic toward him. The Court can hold the stated view regarding the e-mail and continue to evaluate the case fairly.

Finally, the plaintiff contends that certain statements made by Judge Finnegan and this Court reflect bias against his counsel, manifesting "unwarranted skepticism," admonishment, and diminution of counsel's capabilities and conduct in this case. *See* R. 268-1 ¶¶ 9, 25-28. The Court disputes this characterization of the comments at issue. Even if the characterization were accurate, however, recusal would not be required for two reasons. First, the comments were made in the context of judicial efforts to keep this case on course. "[A] judge's ordinary efforts at courtroom administration remain immune from charges of partiality, even if the judge exhibits impatience, dissatisfaction, annoyance, and even anger." *In re Milwaukee*, 788 F.3d at 723 (internal punctuation and citation omitted). Second, to support recusal, the bias alleged must be against the party and not simply his

13

counsel, "because antipathy to an attorney is insufficient grounds for disqualification" unless the facts suggest that the "bias against [the] attorney can reasonably be imputed to [her client]." *Sykes*, 7 F.3d at 1339 (citation omitted). The plaintiff attempts to show that this Court imputed bias toward counsel to him, citing the following excerpt from the January 6, 2017 hearing transcript:

> If I form an unfavorable opinion about one of you, either side, because of … your lack of professionalism, as a matter of human nature . . . I'll do my best to make sure it doesn't rub off and hurt your client.

R. 268-1 ¶ 9. Of course this statement says nothing about the Court *actually* holding an unfavorable opinion of counsel for either side or imputing that opinion to either party. In fact, it promises that the Court will make every effort not to do any such thing. Moreover, the purpose of the comment was to dissuade counsel from engaging in inappropriate, unprofessional conduct. It was made following a representation by plaintiff's counsel that "right now the attorneys are hating each other" and "emotional[ly] attacking . . . each other." R. 148 (Hrg. Tr. Jan. 6, 2017) at 26. Placed in context, the Court's response was as follows:

> Well, we don't need to go there. I don't see hate being exhibited. . . [L]ower the temperature between the two of you. I'm not casting stones on either side. And just act professionally because if you don't, it will inure to the detriment of your clients. If I receive a -- if I form an unfavorable opinion about one of you, either side, because of the -- your lack of professionalism, as a matter of human nature, it -- it – I'll do my best to make sure it doesn't rub off and hurt your client. But you don't want to even put that risk to your client . . . So do your best to act professionally. I'm sure you both will.

*Id.* at 26-27. From counsel's response—"Understood"—the Court is satisfied that the purpose of the warning was clear, *see id.* at 27. Far from

14

demonstrating bias, this warning, applicable to both sides, was intended to set a tone of civility in a case where it appears personal animus between the parties runs high.

## Conclusion

The Court previously found that the plaintiff inexcusably waived his jury demand in this matter and that permitting him to withdraw that waiver would unduly prejudice the defendant. The Court stands firmly behind that analysis. However, the allegations of bias set forth in the recusal motion put a wrinkle in the Court's earlier assessment of relative prejudice. "It is a fundamental principle of justice that it is important that a litigant not only actually receive justice, but that he believe he has received justice." *United States v. Pfizer, Inc.*, 569 F.2d 319, 323 (8th Cir. 1977) (internal quotation marks and citation omitted). To that end, even when there is no actual bias, but merely a perception of bias by one party such that an unfavorable verdict would lead him to feel he had been treated unfairly, courts must consider whether to apply their discretion to order a jury trial. *Id.* (holding that where trial judge expressed strong opinions on the legal and factual issues of a case during settlement negotiations, it was an abuse of discretion to order a bench trial); *see also Chanofsky v. Chase Manhattan Corp.*, 530 F.2d 470, 473 (2d Cir. 1976) ("Inasmuch as Judge Duffy has already indicated his views on the factual questions to be tried [by way of a summary judgment ruling], we think that withdrawal of plaintiff's [jury] waiver should be permitted regardless of the technical merits of his Rule 39 argument.").

Rule 39(b) of the Federal Rules of Civil Procedure grants courts broad discretion in determining whether to relieve a party from waiver. It requires that if a jury trial has been waived, as it has been here, a motion is necessary to invoke the court's discretion. *See Swofford v. B&W, Inc.*, 336 F2d 406, 409 (5th Cir. 1964). The Court will construe the recusal motion as motion pursuant to Rule 39(b), or alternatively reconsiders on its own motion its previous order striking the plaintiff's jury demand. *See Horowitz v. Alloy Automotive Co.*, 677 F. Supp. 564, 567 (N.D. Ill. 1988) (construing a belated jury demand as a Rule 39(b) motion). To avoid any perception of injustice at trial and in the rendering of a verdict, the Court orders this case to be tried to a jury.

                                        ENTERED:

                                        */s/ Thomas M. Durkin*

                                        Honorable Thomas M. Durkin
                                        United States District Judge

Dated: July 26, 2017